USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___09/16/2021___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

GERTRUDYS FERNANDEZ,

                                        Plaintiff,            1:20-cv-3106 (ALC)

        -against-                                            **OPINION & ORDER**


COMMISSIONER OF SOCIAL SECURITY,


                                        Defendant.
---------------------------------------------------------x
**ANDREW L. CARTER, JR., United States District Judge:**

        Plaintiff Gertrudys Fernandez ("Plaintiff" or "Ms. Fernandez") brings this action

challenging the Commissioner of Social Security's ("Commissioner" or "Defendant") final

decision that Ms. Fernandez was not entitled to disability insurance benefits under Title II or

supplemental security income under Title XVI. Currently pending are the parties' cross motions

for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). ECF Nos. 15, 17. The Court has

considered the parties' submissions and for the reasons set forth below, Plaintiff's motion is

**DENIED**, and Defendant's motion is **GRANTED**.

                                    **BACKGROUND**

**A.  Procedural History**

        On March 28, 2016, Plaintiff filed a Title II application for a period of disability and

disability insurance benefits. R. at 21.[1] On May 9, 2016, Plaintiff protectively filed a Title XVI

application for supplemental security income ("SSI"). *Id.* In both applications Plaintiff alleged

disability beginning October 1, 2009. *Id*. The Social Security Administration ("SSA") denied

---
[1] "R" refers to the Certified Administrative Record filed at ECF No. 12. Pagination follows original pagination in
the Certified Administrative Record.

Plaintiff's claims on June 27, 2016. *Id.* Ms. Fernandez then requested a hearing before an Administrative Law Judge on July 27, 2016. R. at 148.

On April 11, 2018, a hearing was held before Administrative Law Judge ("ALJ") B. Hannan where Ms. Fernandez appeared unrepresented alongside Vocational Expert ("VE"), Straynay Vossen, and an interpreter, Daniel Wisefelt. R. at 69-75. Ms. Fernandez requested that the hearing be postponed so that she could obtain a representative. R. at 71. On January 18, 2019, a hearing was held before ALJ Mark Solomon. R. at 79. Ms. Fernandez appeared with her attorney, Jacques Farhi. *Id*. Medical expert, Dr. Allan Levine, and VE Melissa Fass-Karlin testified. *Id.* Amanda Bradshaw, Spanish interpreter, was also present. R. at 84.[2] ALJ Solomon issued a decision denying Plaintiff's claims on February 11, 2019. R. at 21-32. On February 19, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. R. at 1. This rendered the ALJ's decision the final decision of the Commissioner of Social Security. *Id.*

On April 17, 2020, Ms. Fernandez filed this action against the Commissioner of Social Security. ECF No. 1 ("Compl."). On November 19, 2020, Ms. Fernandez moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and submitted an accompanying memorandum of law in support of her motion ("Pl. Mot."). ECF Nos. 15-16. On January 14, 2021, Defendant cross-moved for judgment on the pleadings and submitted a memorandum of law in support of Defendant's motion and in opposition to Plaintiff's motion for judgment on the pleadings ("Def. Opp."). ECF Nos. 17-18. On February 4, 2021, Ms. Fernandez submitted a reply memorandum of law in further support of her motion for judgment on the pleadings and in opposition to Defendant's cross-motion ("Pl. Reply"). ECF No. 19. The Court now considers the parties' motions.

---

[2] An unnamed interpreter was also present for a portion of the hearing. R. at 82-84.

### B.  Non-Medical Evidence

#### 1.  January 18, 2019 Hearing

##### i.  Plaintiff's Testimony

Ms. Fernandez appeared before ALJ Solomon and testified with the assistance of a Spanish interpreter, Amanda Bradshaw. R. at 84. At the time of the hearing, Plaintiff was 51 years old. *Id.* Plaintiff is a United States citizen and testified that she understands basic conversational English but cannot read and write basic English. R. at 85-86. Plaintiff obtained an 8th-grade level education in the Dominican Republic. R. at 84-85. Plaintiff stated that she could take care of her own personal needs, including dressing herself, bathing/showering herself, and grooming herself. R. at 87. She noted that she could do household chores except cleaning, that she went shopping about once a week and that she sometimes walked her grandson to school. R. at 89, 91. She also stated that she previously went to the gym two or three times per week and could travel on public transportation on her own. R. at 88-89, 91.

According to Plaintiff, she had frequent pain in her ribs, back, and right leg that could last for up to three weeks at a time. R. at 87-88. Plaintiff also suffered from daily crying spells, as well as from tension headaches at least twice per week. R. at 92-93. As a result of her tension headaches, she had to lie down until the headaches subsided. R. at 93. Additionally, Plaintiff testified that she had trouble sleeping through the night. R. at 92. Plaintiff takes pain and HIV medication daily and receives ongoing psychiatric treatment. R. at 91-92. To treat pain, Plaintiff took Naprosyn and Ibuprofen at 600 and 500 milligrams, respectively. R. at 91. According to Plaintiff, she was supposed to begin physical therapy which she had not yet started. *Id*. She stated that when she was in pain, she stayed at home and tried to minimize walking to reduce

pain and thus did not use any assistive devices to help her walk. R. at 89. Plaintiff also testified

that she has memory problems and cannot remember tasks involving multiple steps. R. at 94-95.

Ms. Fernandez testified that she could sit for about two hours at a time and could stand

for less than three hours at a time. R. at 90. She stated that she has difficulty lifting her arms over

her shoulders and behind her head, and she testified that her doctor advised her not to lift more

than ten pounds at a time. R. at 90-91.

### ii.  Melissa Fass-Karlin - Vocational Expert

VE Melissa Fass-Karlin examined a scenario of an individual with conditions similar to

Ms. Fernandez and testified as to their likely employability. R. at 116-20. Ms. Fass-Karlin was

asked to examine the employability of an individual who can lift or carry twenty pounds

occasionally and ten pounds frequently, can sit for six hours, can stand and walk for a total of six

hours, is limited to occasional climbing of stairs and ramps, crouching and stooping, and cannot

kneel or crawl. R. at 116. She would also have to avoid working at unprotected heights, with

hazardous machinery, or in weather extremes, but could otherwise perform the full range of

unskilled work. *Id.* Ms. Fass-Karlin stated that someone with these limitations would not be able

to perform her past work as actually or normally performed. *Id.*

When asked if a hypothetical claimant of Plaintiff's age would be able to find any

unskilled, light jobs, that she could perform, Ms. Fass-Karlin stated that there were numerous

jobs, such as an assembler of small products, inserting machine operator, and/or laundry worker,

all of which require only light, unskilled work. R. at 117. Ms. Fass-Karlin testified that an

individual in these roles could only be off task up to five percent of the time and miss one day of

work a month before they would be deemed unable to work. *Id.* Ms. Fass-Karlin also stated that

if the hypothetical claimant could not do one-and two-step tasks, then they could not do the jobs she identified. R. at 120.

### 2. Disability Reports

In a disability report from around May 2016, Ms. Fernandez's reported that her conditions did not require her to make changes to her work activity. R. at 327. According to the report, Plaintiff was taking the following medications: Cyclobenzaprine, Diflucan, Prezista, Ritonavir, Sertraline and Truvada. R. at 330. Plaintiff stated that she had seen a doctor or other healthcare professional in the past or had future appointments scheduled for both physical and mental conditions. *Id.* A second disability report from July 2016 was substantially the same. R. at 350-56.

### 3. Function Report

Ms. Fernandez's May 2016 function report indicates that she feeds, bathes, and takes her grandson to school daily and that she has no issues with personal care and does not need reminders to take her medications. R. at 335-36. Plaintiff cooks, cleans, does her laundry and dishes without any help. R. at 336-37. According to the function report, Ms. Fernandez's conditions do not affect her sleep. R. at 335. Plaintiff cannot lift over 30 pounds, and on some days, she faces difficulty standing and sitting and sometimes has trouble kneeling. R. at 339. She also noted that her conditions affect her ability to squat. *Id*. She must stop all activity when she gets a headache which occurs three times a week. R. at 341-42.

### C.  Medical Evidence

### 1. Medical Treatment

### i.  Dr. Asaf Gave

On September 7, 2017, Dr. Asaf Gave performed an elective surgery on Ms. Fernandez to

remove a right axillary mass. R. at 447-48. He removed the mass with no complications. *Id.* Before surgery, Dr. Gave requested that Dr. Richard Libes perform posteroanterior and lateral chest radiographs which showed that Plaintiff's heart size was normal, that there were no infiltrates or effusions, and no pneumothorax. R. at 449. While the Hilar shadows were unremarkable, the radiographs did show slight deviation of the trachea to the right of midline, slight scoliosis with minimal degenerative changes in the spine, and cholecystectomy clips. *Id.* Dr. Libes's impression was that Ms. Fernandez did not suffer from acute cardiopulmonary disease, though there was a slight deviation of the trachea to the left of the midline that correlated to right lobe thyroid enlargement. *Id.*

As a follow-up to the surgery, in January 2018, Dr. Brian Jin performed a targeted sonographic evaluation, at the request of Dr. Alan Tso. R. at 450. Dr. Jin performed an evaluation of the right axillary region and found no abnormal solid or cystic mass. *Id*. Dr. Jin's impression was that there was no sonographic evidence of malignancy and that the previously seen axillary dermal lesion was no longer there, which was consistent with the recent surgical excision. *Id.* He recommended that she return to routine mammogram screening in June 2018. *Id.*

### ii.   Rebecca Wilson, Nurse Practitioner ("NP")

On June 8, 2018, Nurse Practitioner Rebecca Wilson submitted a Medical Source Statement regarding Plaintiff. R. at 685-90. NP Wilson stated that for the last year and a half, Plaintiff came in for an examination every three months. R. at 685. NP Wilson noted that Plaintiff had been diagnosed with HIV, muscle tension headaches, lower back pain, neck pain, and memory loss. *Id*. Additionally, she noted that Plaintiff had reduced motion and tenderness in her neck. *Id.* NP Wilson opined that the claimant could sit for six hours and stand and walk for an hour at a time before alternating postures and three hours total during an eight-hour shift. R. at

686. Additionally, she noted that Plaintiff would have to take less than fifteen-minute breaks before returning to standing or walking. *Id.* However, she stated that she did not need to rest by lying down during the eight-hour workday. *Id.* NP Wilson also noted that Plaintiff could occasionally lift and carry up to fifty pounds and occasionally stoop and balance on level terrain. R. at 688. She observed that Plaintiff could occasionally maintain her neck in forward flexion and backward flexion, and rotate it left and right. *Id.* She could also frequently reach with both her hands and work primarily with her hands and fingers in both hands. R. at 689. NP Wilson noted that Plaintiff did not use any assistive device for walking or standing. *Id.* She also indicated that Plaintiff's pain was severe enough to often interfere with her attention and concentration. R. at 687. However, NP Wilson noted that Plaintiff would likely only miss work less than once a month as a result of her impairments. R. at 690.

### 2. Psychiatric Treatment

#### i. Joe Brewster, M.D.

On June 6, 2018, Dr. Brewster completed a medical source statement for Plaintiff. He noted that Plaintiff had a poor memory; suffered from sleep and mood disturbances, emotional lability, anhedonia or pervasive loss of interests, had feelings of guilt and worthlessness, difficulty thinking/concentrating, decreased energy, and generalized persistent anxiety. R. at 681. Dr. Brewster diagnosed Plaintiff with major depressive disorder and noted that her major psychosocial factors were related to medical and family stressors and the fact that her son died over ten years ago. *Id.* He stated that Plaintiff was attending bi-weekly 45-minute psychotherapy sessions and had been in mental health treatment since January of 2017. *Id.* Dr. Brewster further noted that Plaintiff continued to complain of a depressed mood, anxiety, lack of interest, poor

concentration and feelings of emptiness. R. at 682. He noted that Plaintiff was taking 20mg of Prozac each morning. *Id.*

### D.  Opinion Evidence

#### 1.  Dr. Ram Ravi

Dr. Ram Ravi, an occupational medicine specialist, saw Ms. Fernandez on June 14, 2016, after receiving a referral from the Division of Disability Determination for an internal medicine examination. R. at 439-43. Ms. Fernandez reported that she had been suffering from HIV, anemia, back pain, headaches, and urinary incontinence. R. at 439-40. Plaintiff also stated that she cooked, provided childcare, and showered, bathed, and dressed herself seven times a week. R. at 440. She further stated that she shopped twice per week and cleaned and did laundry once a week. *Id.*

Dr. Ravi performed a consultative physical examination where he noted that Ms. Fernandez appeared to be in no acute distress, had a normal gait and stance, could walk on heels and toes without difficulty, used no assistive devices, and needed no help changing for the exam or getting on and off the exam table. R. at 441. He also observed that she could squat thirty percent of maximum and that she was able to rise from the chair without difficulty. *Id.* Per her history, Dr. Ravi diagnosed Ms. Fernandez with HIV, anemia, back pain, headaches, and urinary incontinence. R. at 442. Dr. Ravi concluded that Ms. Fernandez had no limitations in sitting or standing and only moderate limitations in bending, pushing, pulling, lifting, and carrying. *Id*. He noted that she should avoid squatting due to her back pain and that she may require scheduled interruptions due to her history of headaches and urinary incontinence. R. at 442-43.

On November 5, 2018, Dr. Ravi performed an internal medicine examination on Plaintiff. R. at 692-95. Plaintiff's chief complaints during the visit were her HIV, gastritis, back pain, and

right ankle pain. R. at 692. Plaintiff had been suffering from gastritis for four months and was receiving treatment, including medication, though at the time she rated her abdominal pain a seven out of ten. *Id.* According to Dr. Ravi, Plaintiff appeared to be in no acute distress, but she was not able to walk on her heels or toes and declined to squat due to pain. R. at 693. Additionally, Plaintiff reported discomfort when standing and declined to get on and off the exam table due to pain. *Id.* However, Plaintiff needed no help changing for the exam, did not use any assistive devices, and was able to rise from her chair without difficulty. *Id.* Dr. Ravi opined that Plaintiff had no limitations sitting, and moderate limitations standing, walking, pushing, pulling, lifting, and carrying and advised Plaintiff to avoid bending due to her back pain and right ankle pain. R. at 695. Plaintiff was instructed to go to the emergency room immediately for further evaluation of the reported abdominal pain. *Id.*

In a medical source statement of ability to do work-related activities completed the same day, Dr. Ravi stated that Plaintiff could occasionally lift and carry up to twenty pounds but nothing heavier. R. at 696. Dr. Ravi indicated that Ms. Fernandez could at one time, without interruption, sit for six hours, stand for three hours, and walk for three hours. R. at 697. Dr. Ravi stated that in total, during an eight-hour workday, Ms. Fernandez could sit for eight hours, stand for four hours, and could walk for four hours. *Id.* Dr. Ravi also opined that Plaintiff could use her hands occasionally for reaching in all directions and for pushing and pulling and frequently to perform the tasks of handling, fingering, and feeling. R. at 698. Dr. Ravi opined that Plaintiff could never use her right foot to operate foot controls though she could occasionally use her left foot. *Id.*

Dr. Ravi further opined that Plaintiff could never climb stairs and ramps, ladders or scaffolds, and could never balance, stoop, kneel, crouch or crawl. R. 699. Regarding

environmental limitations, Dr. Ravi stated that Plaintiff could never tolerate exposure to unprotected heights or moving mechanical parts and that she could never operate a motor vehicle. R. at 700. Plaintiff could only occasionally be exposed to humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibrations. *Id*.

### 2. Dr. Haruyo Fujiwaki, Ph.D.

On June 14, 2016, Dr. Haruyo Fujiwaki, Ph.D., performed a consultative psychiatric evaluation on Ms. Fernandez. R. at 434-37. Dr. Fujiwaki stated that Ms. Fernandez had experienced depression since her son died in 2007 and as a result was mildly limited in maintaining attention and concentration as well as maintaining a regular schedule. R. at 434, 436. Dr. Fujiwaki noted that Ms. Fernandez reported suffering from dysphoric moods, loss of usual interests, and fatigue. R. at 434. He stated that Plaintiff reported feeling depressed all the time but denied suicidal and homicidal ideations. *Id.*

Dr. Fujiwaki further observed that Plaintiff was cooperative and that her manner of relating, social skills, and overall presentation were adequate. R. at 435. Ms. Fernandez's thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia. *Id.* He noted that her affect was of full range and appropriate in speech and thought content, that her mood was dysthymic, her sensorium clear, and that she was oriented as to person, place, and time. *Id.* Dr. Fujiwaki found that Ms. Fernandez's attention and concentration were intact and that she could count and do simple calculations and serial 3s. *Id.* He noted that Plaintiff sometimes had auditory hallucinations as she sometimes heard someone calling her. *Id.* Dr. Fujiwaki also found that Ms. Fernandez's recent and remote memory skills were mildly impaired since after five minutes she could only recall one out of the three objects that she had

been previously shown. R. at 435-36. She could, however, repeat five digits forward and three digits backward. R. at 436.

Plaintiff reported that she could dress, bathe and groom herself. R. at 436. She also reported that she cooked daily, cleaned and laundered weekly and that she shopped twice a week, could manage money and take public transportation alone. *Id.* Plaintiff also reported socializing with friends and spending free time watching TV, listening to the radio, reading, and going to church. *Id.* She also reported going to the gym twice a week. *Id*

Dr. Fujiwaki observed that Ms. Fernandez's intellectual functioning appeared to be slightly below average, though her general fund of information was appropriate to experience. R. at 436. He noted that her insight and judgment were both fair. *Id.* Dr. Fujiwaki concluded that Ms. Fernandez could follow and understand simple directions and instructions and perform simple tasks on her own. *Id.* Dr. Fujiwaki recommended that Ms. Fernandez receive psychological therapy for depression and that she maintain her medical treatment regimen. *Id.* Dr. Fujiwaki diagnosed Ms. Fernandez with unspecified depressive disorder in addition to her previous self-reported diagnoses of HIV, anemia, back pain, and urinary incontinence. *Id.*

### 3.  Michael Kushner, Ph.D.

On November 5, 2018, licensed psychologist Dr. Michael Kushner, Ph.D., saw Ms. Fernandez for a consultative psychiatric evaluation. R. at 704-07. No psychiatric or medical hospitalizations or outpatient psychiatric treatment history were reported, though Ms. Fernandez noted that she had been receiving psychiatric treatment at the Ryan NENA Center. R. at 704. Plaintiff reported having throat problems, back pain and HIV. *Id.* Plaintiff reported taking Hydroxyzine, Loratadine, Trazodone, Estradiol, Genvoya, Naproxen, Medroxyprogesterone, Valacyclovir, Ibuprofen, Omeprazole, and Ranitidine. *Id.* Ms. Fernandez reported that she

experienced periods of depression including social withdrawal and trouble sleeping, but denied suicidal or homicidal ideations. *Id.* Plaintiff stated that she felt anxious in closed-in areas, but reported no particular symptoms of panic or mania, despite seeing shadows. *Id.* She also reported occasionally having memory and concentration issues. *Id.* Dr. Kushner observed that Ms. Fernandez's concentration and attention, and her recent and remote memory skills were somewhat impaired. R. at 705. Dr. Kushner also observed that Plaintiff's demeanor and responsiveness to questions were cooperative and that her social skills and overall presentation were fair. *Id.* He noted that her mood was somewhat dysthymic and that her affect seemed somewhat depressed. *Id.* He further noted that Plaintiff's thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia. *Id.* Dr. Kushner opined that Plaintiff's insight was fair and her judgment was good. R. at 706. Plaintiff reported that she does get up and get dressed every day, that she manages her own money, and can take the bus at times though she dislikes taking public transportation. *Id.* She also reported that she spends her days taking her grandson to school, and sometimes goes shopping or cooks. *Id.*

Dr. Kushner stated that Ms. Fernandez's evaluation results appeared to be consistent with psychiatric problems, but that this in itself did not appear to be significant enough to interfere with Plaintiff's ability to function daily. R. at 706. Dr. Kushner diagnosed Plaintiff with unspecified depressive disorder, in addition to back pain, HIV, and a throat problem previously reported by Ms. Fernandez. *Id.* Dr. Kushner recommended that Plaintiff continue with psychological and psychiatric treatment for six months to one year. R. at 707. He concluded that Plaintiff's prognosis was fair. *Id.*

### 4. Dr. Allan Levine

At the January 18, 2019 ALJ hearing, Dr. Allan Levine testified as a medical expert in orthopedic surgery. R. at 96. Dr. Levine found that Ms. Fernandez had the medically determinable impairments of chronic sprains or contusion with synovitis of the right knee. R. at 98, 100. However, he noted that there were no MRIs, so he could not comment on any internal derangement. R. at 98.

He testified that the second medically determinable impairment was that of chronic back pain and pain in the right leg, secondary to mild degenerative disease of the L5-S1 level. *Id.* There was evidence in the record of back pain going back to September 2014. R. at 99. He also noted that Ms. Fernandez had indicated to him that she suffered from pain in her right ankle lasting over four years. R. at 99. However, there was no imaging of the right ankle at all, so he could not assign a medically determinable impairment to the right ankle. *Id.* He also noted that there were also subjective complaints of bilateral knee pain, however, there was no imaging of the left knee, so he could not assign a medically determined impairment to the left knee. R. at 100.

Dr. Levine observed that with regard to Plaintiff's knees, while testimony suggested inability to effectively ambulate, medical records indicating normal gait suggested otherwise. R. at 100-01. Concerning Plaintiff's back pain, Dr. Levine felt that a listing would not be met or equaled, as he found no evidence of nerve root or spinal cord compromise. R. at 101. Indeed, Dr. Levine observed that the medical records all documented normal strength and reflexes and found sensory evaluation to be normal. *Id.* Dr. Levine found it significant that Plaintiff could still perform basic daily tasks on her own such as shopping, cooking, riding the bus, showering, cleaning, and doing laundry, dressing herself, and taking care of her grandson. R. at 102-03. Dr.

Levine also testified that Plaintiff should be able to occasionally lift fifty pounds and frequently lift ten pounds. R. at 103. According to Dr. Levine, Plaintiff should also be able to carry ten pounds frequently and carry twenty pounds occasionally. R. at 104. Dr. Levine also stated that Plaintiff should be able to sit for six hours with customary breaks in an eight-hour workday and stand three out of eight hours with the ability to sit for a two-to-three-minute period. R. at 105. Additionally, Dr. Levine found that Plaintiff should be able to walk for three out of eight hours with the ability to sit for a two-to-three-minute period. *Id.* He noted that she should avoid uneven surfaces when walking. *Id.* Dr. Levine also stated that Plaintiff could occasionally navigate stairs or ramps and occasionally crouch or stoop, but not repetively. R. at 106. Dr. Levine testified that Plaintiff should avoid ladders, scaffolds, crawling, kneeling, heavy vibratory machinery or dangerous type equipment, unprotected heights, and extreme cold exposure. *Id.* Otherwise, Dr. Levine felt that Plaintiff had unlimited use of her upper extremities for both fine and gross manipulation. *Id.*

## LEGAL STANDARD

### A. Judicial Review of the Commissioner's Determination

A district court reviews a Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts "only if a reasonable factfinder would *have to conclude otherwise*." *Brault v.*

*Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (internal quotation marks omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted).

### B.  Commissioner's Determination of Disability

#### 1.  Definition of Disability

A disability, as defined by the Social Security Act, is one that renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A). Further, "[t]he impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

#### 2.  The Commissioner's Five-Step Analysis of Disability Claims

The Commissioner uses a five-step process to determine whether a claimant has a disability within the confines of the Social Security Act. 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the Commissioner will consider the claimant not to be disabled. *Id*. Second, if the claimant is not engaged in substantial gainful activity, the

15

Commissioner considers whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that meets the duration requirement of a continuous period of 12 months. *Id.* § 404.1520(a)(4)(ii); *see also id.* § 404.1509 (establishing duration requirement). Third, if the claimant suffers from such an impairment, the Commissioner determines whether that impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of the Social Security Act regulations. *Id*. § 404.1520(a)(4)(iii); *see also id.*, Pt. 404, Subpt. P, App'x 1. If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's impairment, she has the residual functional capacity ("RFC") to perform her past work. *Id.* § 404.1520(a)(4)(iv). Finally, if the claimant is unable to perform his past work, the Commissioner determines whether there is other work which the claimant could perform. *Id.* § 404.1520(a)(4)(v).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and 'bears the burden of proving his or her case at steps one through four." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). At step five, however, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. § 404.1560), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

### 3. The ALJ's Decision

First, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since October 1, 2009, the alleged onset date of disability. R. at 23.

Second, the ALJ concluded that Plaintiff has the severe impairments of lumbar degenerative disc disease and right knee synovitis and effusion. *Id.* The ALJ also found that Plaintiff has HIV, incontinence, a history of anemia, headaches, and thyroid nodules. R. at 24. However, the ALJ concluded that these additional impairments are not severe as they do not limit her ability to perform work-related activities. *Id.* Further, while Plaintiff complained of right ankle pain, there was no evidence of treatment or objective testing and therefore it was not a medically determinable impairment. *Id.* Additionally, the ALJ found that Plaintiff's medically determinable impairment of depression did not restrict Plaintiff's ability to perform basic mental work activities and was therefore nonsevere. *Id.*

Third, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App'x 1. R. at 25.

Fourth, the ALJ found that Plaintiff has the residual functional capacity to perform a restricted range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) since Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, can sit for six hours and stand/walk for a total of six hours in an eight-hour work day, occasionally climb ramps and stairs, crouch and stoop, and can perform a full range of unskilled work, though she cannot kneel or crawl, must avoid unprotected heights, hazardous machinery and weather extremes. R. at 25.

Fifth, the ALJ determined that Plaintiff is unable to perform past relevant work as a home health aide. R. at 31.

Sixth*,* having considered Plaintiff's age, education, work experience and residual functional capacity, the ALJ concluded that there are jobs that exist in significant numbers in the

national economy that Plaintiff can perform. R. at 31. The ALJ therefore concluded that Plaintiff

was not disabled within the meaning of the Act. R. at 32.

## DISCUSSION

Ms. Fernandez asserts that the ALJ's decision was erroneous and should be reversed.

Plaintiff argues that the ALJ's finding that Plaintiff had the RFC to perform light work was not

supported by substantial evidence and that the ALJ failed to properly weigh the medical opinion

evidence. The Court disagrees and concludes that the ALJ's decision was supported by

substantial evidence and was not erroneous.

### I.     The ALJ's Finding that Plaintiff Could Perform A Range of Light Work is Supported by Substantial Evidence

Plaintiff asserts that the ALJ improperly found that her RFC was limited to light work

with certain postural limitations, and that if he had properly considered all the evidence, he

would have found that she was at most limited to sedentary work and therefore disabled under

the Medical Vocational Guidelines. Pl. Mot. at 16.[3] Essentially, her argument is that the ALJ's

decision was not supported by substantial evidence. Plaintiff's argument is meritless.

The RFC determination is "the most [a claimant] can still do despite [her] limitations,"

and is based upon all the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a),

416.945(a); SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). Plaintiff bears both the general burden

of proving disability within the meaning of the Act and the burden of proof at the first four steps

of the sequential analysis. *Burgess*, 537 F.3d at 128. As a result, Plaintiff bears the burden of

proving that her RFC is more restrictive than that found by the ALJ, whereas the Commissioner

---

[3] Medical Vocational Rule 20 C.F.R. Part 404, Subpt. P, App'x 2 § 200.00(h) provides that individuals ages 45-49 that are restricted to sedentary work, are unskilled or have no transferable skills, can no longer perform past relevant work and are unable to read or write in English should be found disabled.

need only show that the ALJ's decision was supported by substantial evidence in the record. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

The Court concludes that the ALJ's finding that Plaintiff has the RFC to perform light work is supported by substantial evidence. The ALJ pointed out that Plaintiff was observed to walk with a normal gait numerous times. R. at 29-30 (citing, *inter alia*, R. at 441 (Dr. Ravi finding that Plaintiff had a normal gait in June 2016); R. at 554 (NP Wilson finding normal gait in November 2017); R. at 533 (NP Wilson finding normal gait in December 2017); R. at 521 (NP Wilson finding normal gait in January 2018)). The ALJ also noted that Plaintiff frequently presented with full strength in her extremities and no muscle atrophy. R. at 27-30 (citing, *inter alia*, R. at 442 (finding full strength in her extremities in June 2016); R. at 517 (same in February 2018); R. at 741 (finding no muscle atrophy in January 2019)). The record contains physical examinations noting normal findings on numerous occasions. *See, e.g.*, R. at 431 (May 2014); R. at 421 (April 2015); R. at 628 (February 2017); R. at 521 (January 2018); R. at 741 (January 2019). Even where findings were slightly abnormal, they were only mildly abnormal. R. at 429, 650-51.

The record also contains multiple instances where Plaintiff told her providers that she felt well and had no complaints. R. at 431 (Plaintiff reported no complaints to NP Villarreal in May 2014); R. at 554, 595, 626, 628 (Plaintiff reported no physical complaints to NP Wilson, was in good health and had good exercise tolerance). Even when she did have physical complaints, she reported having good exercise tolerance and exercising at the gym regularly. R. at 428, 576, 630.

The ALJ also properly considered Plaintiff's activities of daily living. *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013); *Poupore*, 566 F.3d at 307. Plaintiff reported going to the gym consistently—as much as five times per week—and being the sole caregiver for her grandson.

*See, e.g.*, R. at 87, 630. She also reported cooking daily, cleaning, laundering, shopping, taking public transportation, attending church, showering/bathing and dressing herself. *See, e.g.*, R. at 436, 440, 706.

Because the ALJ's finding that Plaintiff had the RFC to perform light work is supported by substantial evidence, the Court concludes that the ALJ did not err in reaching his decision.[4]

## II.   The ALJ Properly Weighed the Medical Opinion Evidence

Plaintiff also argues that the ALJ failed to properly weigh the medical opinion evidence. Specifically, Plaintiff asserts that the ALJ erred when he assigned NP Wilson's opinion little weight because it was consistent with the medical records and supported by Dr. Ravi's consultative examinations. Pl. Mot. at 17, 19-21. Plaintiff further asserts that the ALJ erred in assigning "significant weight" to Dr. Levine's opinion given that he never met or examined Plaintiff. Pl. Mot. at 22. The Court disagrees.

The ALJ gave NP Wilson's opinion little weight because she is not an acceptable medical source. R. at 29. Additionally, as a treating source, her opinion was also given little weight because it was inconsistent with the record. *Id.*

Because Plaintiff filed her claims prior to March 27, 2017, the ALJ properly found that NP Wilson was not an acceptable medical source under the applicable agency regulations and thus her opinion could not be afforded controlling weight. *See* 20 C.F.R. §§ 404.1502(a)(7) and 416.902(a)(7). The ALJ was also "free to discount" non-acceptable medical sources in favor of other medical opinions more consistent with the record as a whole. *Genier v. Astrue*, 298 F.

---

[4] Plaintiff also argues that the ALJ erred when he found that Plaintiff could understand basic English and failed to consider that Plaintiff was unable to read or write in English. Pl. Mot. at 23-24. At most this constitutes harmless error given that the ALJ found she had the RFC to perform light work (not that she was restricted to sedentary work, which would be required to find that she was disabled under Medical Vocational Rule 20 C.F.R. Part 404, Subpt. P, App'x 2 § 200.00(h)). As discussed, the ALJ's finding that Plaintiff had the RFC to perform light work was supported by substantial evidence; thus, we reject Plaintiff's arguments on this ground.

App'x 105, 108-09 (2d Cir. 2008) (summary order); *Diaz v. Shalala*, 59 F.3d 307, 314-15 (2d Cir. 1995). That is exactly what the ALJ did here, as he found that NP Wilson's opinions were inconsistent with treatment notes (including her own) reflecting normal or mild findings. The Court has considered Plaintiff's arguments regarding NP Wilson's opinion and finds them to be without merit.

The ALJ also gave "substantial weight" to Dr. Levine's opinion because he had the opportunity to review most of the evidence and because the overall record supports his conclusion that no listing was met. R. at 30. Contrary to Plaintiff's assertions, this was not erroneous. It is well-established that a medical expert's opinion, such as Dr. Levine's, can constitute substantial evidence. *See, e.g.*, *Heagney-O'Hara*, 646 F. App'x 123, 126 (2d Cir. 2016) (summary order) (finding that ALJ correctly gave great weight to the opinion of a medical expert even though he lacked a treating relationship since his opinion was consistent with the objective medical evidence in the record). Further, in accordance with the factors in 20 C.F.R. §§ 404.1527 and 416.927, the ALJ also considered the fact that Dr. Levine was a specialist in orthopedics and that he reviewed the record and rendered an opinion that was consistent with the overall record. R. at 29-30.

Plaintiff attempts to discredit Dr. Levine's opinion in several ways. She asserts that (1) Dr. Levine disregarded Dr. Ravi's findings; (2) Dr. Levine dismissed a diagnosis of osteoarthritis of the right knee; (3) Dr. Levine expressed his own uncertainty about his opinion and wanted to ask Plaintiff questions before he gave his testimony; (4) Dr. Levine testified that he could not comment about any internal derangement because there were no MRIs; (5) Dr. Levine had trouble reading some diagnostic reports; and (6) Dr. Levine ignored Plaintiff's psychological impairments, headaches and HIV diagnosis.

Plaintiff's arguments to do not persuade the Court. In his testimony, Dr. Levine referred to numerous parts of the record indicating that Plaintiff had a "normal gait with full range of motion of all extremities." R. at 101. He also referred to Dr. Ravi's examination where he found a "moderate antalgic gait" and "significant decreased range of motion of both knees at only 35 degrees flexion" which was not "noted anywhere else" in the record and "not compatible with the ability to get up from a chair . . . without difficulty" which was noted in the same examination. *Id.* Contrary to Plaintiff's characterization of Dr. Levine's testimony, this does not reflect that Dr. Levine disregarded Dr. Ravi's findings. Instead, it shows that Dr. Levine considered them and found that they were inconsistent with the record as a whole, and with Dr. Ravi's observation that Plaintiff had no difficulty getting up from a chair.

Dr. Levine also did not disregard a diagnosis of right knee osteoarthritis. Dr. Levine's testimony reflects that he addressed this diagnosis but concluded that there was nothing in the record to support this diagnosis. R. at 102. Specifically, he stated that the only X-ray he saw of the right knee indicated no arthritis. *Id.* This is not grounds to discredit Dr. Levine's testimony. *See* 20 C.F.R. § 416.921 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). Further, Dr. Levine's statement that he could not comment on an internal derangement because there were no MRIs, R. at 98, does nothing to convince the Court that the ALJ erred when he assigned his opinion substantial weight. He did not state that Plaintiff had no internal derangement, only that he could not comment on it because there were no MRIs.

Plaintiff's contention that Dr. Levine expressed uncertainty about his opinion because he asked the ALJ whether he could ask Plaintiff some questions before his testimony is nonsensical.

Dr. Levine went on to give his testimony even though the ALJ denied his request. Plaintiff's assertion that Dr. Levine's opinion should be discredited because he could not read two X-Rays is also meritless. Dr. Levine indicated that two X-Rays might be the same; however, it is unclear to the Court how this impacts the credibility or the substance of Dr. Levine's opinion.

Lastly, Plaintiff's contention that Dr. Levine did not comment on Plaintiff's psychological impairments, headaches, and HIV diagnosis is similarly unavailing. The ALJ specifically told Dr. Levine to "leav[e] aside any psychiatric issues" because he knew that was not his "area of expertise." R. at 97-98. Dr. Levine is an orthopedic specialist and testified as to Plaintiff's musculoskeletal problems; the fact that he did not testify as to Plaintiff's headaches or HIV diagnosis, areas outside his area of expertise, does not lead to the conclusion that the ALJ should have discounted Dr. Levine's opinion within his area of expertise.

**CONCLUSION**

For the reasons above, Plaintiff's motion is **DENIED**, and the Defendant's motion is **GRANTED**. The Clerk of Court is hereby directed to close this case.

**SO ORDERED.**

**Dated: September 16, 2021**
   **New York, New York**

          **ANDREW L. CARTER, JR.**
          **United States District Judge**